That sounds good, your honor. And I'd like to bring to the court's attention, as yesterday, the district court pending some of these issues, the district court vacated a couple of cases that we have in district court on this particular issue. I know this is a bankruptcy issue about the Sanchins, but the court vacated the court date. So I don't know. I just found out about this yesterday afternoon. I don't know if counsel has more information on it. My counsel that I have that's representing me on that case, I didn't hear about it until yesterday afternoon. So at this point, there's no, there's no court date for the actual wrongful foreclosure that's pending in district court that was vacated. I want to put that on the record if I can. That's just the hearing, not a vacation of a decision. I think it was, it was a hearing. Yes. It was a hearing. Okay. I just found out yesterday afternoon and I didn't get a chance to talk with, with counsel as I just found out about it yesterday afternoon, had a chance to talk to opposing counsel. Also, your honor, the, at this point I was, there's appeal in the Nevada Supreme Supreme court on this issue of whether judge, the district court judge violated her decision when she made a decision to issue a foreclosure certificate. So that's still pending right now. So no decision has been made on that. And I'm going to ask the court here, is it feasible to move forward with this actual case? Or should we continue it? I can, I can go and argue at this point, but you know, is it to argue because this is a separate separate matter, those, those matters will proceed in the ordinary course, but this is sufficient. Okay. No worries. Okay. I just, I just wanted to bring it to the court's attention. Okay. Thank you. Okay.  So, so what we have here today we have issue where the bankruptcy court from my, from my understanding made an improper decision. The actual creditor, they were in violation of the discharge injunction. Let's be real, I want you to be real granular. What is your argument that they are in violation of the discharge injunction? Yes ma'am. They're in violation of discharge injunction. Yes ma'am. Is that in your chapter seven case? This is the 13th your Honor. So what we have here, the chapter seven case was discharged back in 08. The actual claim that the, the creditor, which is, I guess, maybe filed a proof of claim. They filed a proof of claim on a debt on the actual note that was already discharged. And so my argument is how can they file a, go ahead, yes your Honor. So there's a distinction, isn't there, between the, the enforce of the, their inability to enforce it against you personally. That's what the discharge does. There's a distinction between that and the fact that the note itself is still in existence. It's just, they can't sue you personally to collect it by virtue of the discharge, right? So that's a, that's a distinction, isn't it? That's the distinction. Yeah. Cause they personally, basically I've been told that they were trying to collect their debt against me. They said, I owe this debt. So not only were they trying to elected the property, it was actually trying to collect the debt too. So I, I, I don't want to bring that forward. The actual claim that was put in when they submitted the claim, there was no, all the paperwork, your Honor, the motion, all that stuff. There was no signature on the actual modification of the note. But the, the claim actually, when they put in, your Honor, it shouldn't have been put in at this point because it was discharged debt. They were trying to collect their debt against me. You know, although there's a distinction there, they sent me a letter saying I owed X amount of dollars. They told me that I missed the payment. I got documentation saying I missed the payment. When I provided the check that stated, they told me I missed the September 11th, 2011 payment. That was a premises for this whole collection activity. That's when it started. When I submitted the check, now the argument, it moved to, you missed October 11th, October 1st, 2011 payment. So now all the documentation, if you reviewed the case, it says that this, this actual notice of default was all started on a, on a mispayment from a September 1st, 2011 mispayment. When I provided proof of I didn't miss the payment, you know, the action and stuff still continued at this point. Um, I would like to say too, that I know my attorney of record, for whatever reason, in the chapter 13 bankruptcy failed to file any type of opposition. The court states that I'm a bad example. All I did was file a proper paperwork, gave it to my attorney and the attorney was the one that submitted all the documentation on my behalf. We're supposed to amend the complaint. So whatever was on record at this point, you know, the attorney, I feel, you know, submitted the record, you know, the documentation and stuff. And so I don't see how I can be considered a bad example, um, of, uh, Mr. Mayhem. So we're here on the appeal of the sanctions award exclusively, correct? Okay. Yes, ma'am. And before the sanction award, which is you're sanctioned for a bad fake filing, correct? Yes, ma'am. But before that, the judge dismissed your case and made a finding that you filed it in bad faith, correct? Correct. And you didn't appeal from that, right? Well, I wanted to appeal, but my attorney of record didn't appeal. Okay. Well, you may have some issues with your attorney. I'm just going to say, we can't do anything about that. We just have to deal with the record as it exists in front of us. And so my problem is how do I, there's a concept, a legal concept called law of the case. And the law of the case says once a judge decides something in a case, it's binding down the line and the things that come afterwards in the case. So once he dismissed the case for bad fake and you didn't appeal, the law of this case is you did it in bad faith. And so when he went to the sanctions, you're saying, but I didn't do it in bad faith, but I'm wondering how we, why aren't we constrained by a decision that appears to be law of the case in the case? I see your argument, Your Honor.  Thank you for that point. It's not an argument, it's an observation. It's not my job to argue. Observation. Yes, Your Honor. And I see that too. And I tried to speak up in the court and I wasn't able to take the floor as my attorney. That's a separate issue at this point. But as a person that filed bankruptcy, you know, you put your faith and trust in an attorney and you're hoping that they do the right thing. But having said that, Your Honor, the case was rightfully dismissed because of all the errors that was actually found there, which I was surprised by myself. At this point, the case was rightfully dismissed. But sanctions have been offered, you know, from what I understand, the sanctions, Bank of New York Mellon filed the sanctions as a result of me being so persistent in this particular matter, stating that, you know, I didn't, that I didn't miss a payment, you know, so this for me was kind of punitive with the sanctions. It was properly dismissed, dismissed in bankruptcy. And I think the sanctions were more punitive. The council record did follow opposition to that motion for sanctions. That's the only time that some kind of findings were filed in court in reference on my behalf. All I can say, Your Honor, is that, you know, I did everything in good faith. I've been arguing this case dating back from the Chapter 7 bankruptcy. And at this point, if the judge would look at the whole totality, I think no sanctions would have been done at this point. It shouldn't have been done because the case was dismissed. Well, assuming that procedurally, he still had the right to do he or she, whoever, I can't remember which judge, Judge Landis still had the right to do it. You know, you see what I'm saying, our hands are tied to some extent, potentially under the law. That's, you know, to the extent your attorney didn't do what you wanted him to do or what you wanted him to do. I cannot take any position on that, but I just am questioning whether this matters. You have been doing this for a very long time. I mean, yes, Your Honor, talk about 2011 and we're now, I think the defaults 2007, 2011. It's now 2020. So, you know, but I'm wondering whether we even look at that given the determination that he's already made that you acknowledge the dismissal was appropriate. And maybe this is just an issue between you and your attorney. I guess if the whole case would have been reviewed, Your Honor, going back to the Chapter 13, which is usually an opportunity for you to cure the default because they can't collect it from you personally, but they can still collect it from your property. So this whole thing is about you trying to protect the property. So why was the filing of a proof of claim that's intended to give you the number that you need to cure if you want to keep the property, a violation of the stay or the discharge or I guess it would be the discharge. Well, Your Honor, you know, when I spoke with the attorney, we filed a Chapter 13. I thought we were following it in good faith. And at this point, you know, all I can say is that, you know, once again, this case has been going on for so long. And if the judge will look at the original lender in this case was Countrywide. Countrywide originally tried to take the property back in 08. They did initial trustee sale. It was found that they have no standing to foreclose on a property and told me that I would remain in the property and everything moving forward. And then come the bankruptcy. So I'm saying that the judge would look at the totality of everything. Now, maybe 12 years later, 8 years, 10 years later, you have, you know, Bayview who filed the actual proof of claim on behalf of Bank of New York Mellon, allegedly stating that I owe X number of dollars here. But the original lender Countrywide stated that there's no standing, that the note was never endorsed. I mean, it's just simple stuff. I thought if you look at the totality of everything, you know, and I understand about, you know, the judge making a decision based on that chapter 13. But if you look at the whole totality of the case from Countrywide being the original lender, not being able to foreclose basically because there was errors that the note was never transferred to Bank of New York Mellon, which, you know, that's in district court stuff pending. At this point, at least he could have said, hey, no, the findings here, yes, he did violate, but I'm just going to discharge it and let the district court handle this, you know, at this point, you know, so then actually, you know, foreclose on a property, then foreclose on a property, but we still got stuff going on right now, Your Honor. So I'd like you to go ahead and reserve, any questions? I'm sorry. No, you should reserve the rest of your time. All right. Thank you very much. All right. Ms. Combs. Good morning, Your Honor. Can you hear me okay? You might want to project more. You're a little bit soft. Okay. My name is Jamie Combs and I represent the appellee in this matter, Bank of New York Mellon. Despite what you've heard from appellant, there's really only one issue on appeal for this panel side, and that's whether the bankruptcy court abused its discretion when it imposed sanctions against the appellant. It did not. The bankruptcy court acted well within its discretion when it imposed the sanctions and this court should affirm. The bankruptcy court thoroughly supported its decision with specific findings of fact and included a detailed legal analysis addressing each of the requirements before imposing sanctions. And as Your Honor had mentioned earlier, it's important to know what is not on appeal here today is the actual order dismissing the Chapter 13 bankruptcy for bad faith. That order was not appealed from. There's no challenge to that order and it stands unchallenged today. As for the sanctions order, the court had two separate and independent bases for issuing sanctions here. It had its inherent authority under Section 105A of the Bankruptcy Code, and it also had its authority under Bankruptcy Rule 9011. The analysis under both rules overlaps somewhat in the inherent authority analysis. The court is required to make a specific finding of bad faith, and under the 9011 analysis, the court must make findings that the bankruptcy was filed, that it was frivolous, and also that it was filed for an improper purpose. Both of those, all three of those things were addressed by the bankruptcy court, not just in its order dismissing the bankruptcy, but the court again made those same findings, reiterated those same findings at the hearing on the motion for sanctions. And so both of these rules supported the court's order of sanctions, and the filing of the petition was done in bad faith, it was frivolous, and it was made for an improper purpose. I think an important distinction needs to be made, and has been made by the court regarding Bank of New York Mellon's attempt to foreclose on the property. To be very clear, Bank of New York Mellon is only attempting, and had only been attempting to foreclose on the property, it is not, and was not seeking to collect against appellant personally for the debt. So for some background leading up to the bankruptcy filing and the factual history that supported the court's order, the original mortgage loan was taken out in 2004, it was for approximately $615,000 from, countrywide was the original lender. A few years later in 2007 is when appellant filed the original Chapter 7 bankruptcy and received his personal discharge in 2008. Also in 2008, appellant entered into a stipulation with the original lender, countrywide, or its successors, that the automatic stay was lifted for all purposes, but that countrywide or its successors could reach out to him in order to either modify the loan or work out some other foreclosure alternative. In 2010, the bankruptcy case was closed. In 2011, consistent with the stipulation entered into in the Chapter 7 bankruptcy, appellant entered into a loan modification agreement, and the purpose of that was to prevent foreclosure. It allowed him to stay in the property longer without the bank foreclosing. However, almost immediately after entering into that loan modification agreement, appellant defaulted on the loan. It was not just a single payment in September of 2011 that was missed. It was the September 2011 payment and all payments thereafter, or almost all payments thereafter, that were missed. The deed of trust was assigned to Bank of New York Mellon in 2012. There's a document recorded in the property records assigning the deed of trust to Bank of New York Mellon. Bank of New York Mellon is also the holder of the note that has been endorsed in blank, although, again, the note, while it can't be enforced against appellant personally, is still important for the bank to have possession of when it enforces the security interest and foreclosures on the property. In 2013, based on the default of the loan modification agreement, Bank of New York Mellon initiated its foreclosure proceedings by recording a notice of default. Between 2015 and 2018, appellant opted into the Nevada's foreclosure mediation program. Under that program, he was granted four separate mediations with the Bank of New York Mellon or its servicer at the time. Of those four mediations, none of them resulted in any resolution between the parties. No settlement agreement was reached. After the fourth mediation, the state court denied a request to—appellant had requested that the court deny Bank of New York Mellon's request for a certificate allowing it to foreclose. The court denied that, granted Bank of New York Mellon a certificate to allow it to go forward with its foreclosure sale. Could you just— Yeah, go ahead. I'm not familiar with this mediation program. So, there's—how do you get four—so you have a mediation that fails, then they ask for another one, you have a mediation that fails. Sure. Four times. Then, who called it? Who said, we're done? The mediator or Bank of New York Mellon? So, in this case, it was—the first three mediations did not result in the court granting Bank of New York Mellon a certificate to foreclose. And so, when that happens, they have to start over with a new notice of default and the appellant gets another chance at mediation. After the fourth mediation, the court called it and the court said, we're granting the bank a certificate. And how—I guess my question is, again, I'm not familiar with the process, how is the court involved? Who takes it to the court to say, is that a motion of Bank of New York Mellon? Is that a motion of debtor? Is that from the mediator? The rules have changed a bit from when the mediation program was first enacted. Originally, it was a petition. After the mediation, the mediator would issue a statement to the program saying, I think that a certificate should issue. I think a certificate should not issue. And depending on which side you were on, if either party disagreed with the mediator, they could file a petition to the court saying, I want you to review what happened in this the issuance of a certificate. The only reason I was going to interrupt you is, all of that was established. The history that you're just giving us is the basis recited by the bankruptcy court when it made the determination to dismiss the case for bad faith. And what I think Judge Taylor was trying to get at is, we're bound by those facts. He reiterated that as the basis for the imposition of sanctions so that he would make sure that he covered himself with regard to why he decided to do it. But we don't need to revisit all of those or re-find that those facts are true. There was no dispute that that's the record he made. That's what he based the decision on, right? And what you're doing now is just going back through and giving us, again, the support for all of that. But I think the record clearly reflects that he considered and found all those things based on either documents that were presented, testimony that was provided. There's a full support for all of those particular findings. So what it comes down to then is, if there is a basis, was the amount that was awarded reasonable under the circumstances? And maybe you could discuss the amount that was awarded. Was it something that the bank had asked for? Was it the attorney's fees? Was it a percentage of something? Yes, Your Honor. The amount that was requested was the actual attorney's fees and costs that were incurred by Bank of New York Mellon in response solely to the bankruptcy filing. There were numerous other lawsuits that the bank was incurring attorney's fees on. But the attorney's fees requested in this bankruptcy were solely limited to what was incurred by the bank in the bankruptcy and responding to the bankruptcy. So it was a compensatory sanction, not a coercive or punitive sanction? Correct, Your Honor. It was completely compensatory in nature, designed to make the Bank of New York Mellon whole for the fees that it spent defending against the lawsuit. It was not designed to punish appellant or anything like that. There was no fines. There was no punitive damages imposed. It was simply limited to the attorney's fees. Were the attorney's fees supported by billing records that demonstrated the time that was committed, the purposes, and the amount of money that was involved in all that was in the record also, right? Yes, Your Honor. My declaration was attached to the motion, which went through the lodestar factors and also attached our billing records, redacted billing records that went through all of the time that was spent and supported those fees. And it was not challenged below. The opposition was not focused on the amount of the award in so much as whether the award was appropriate at all. So there was really no challenge to the reasonableness of the fees. And the court did make a specific finding that they were reasonable. And so I won't continue to go through the facts, but what ultimately ended up happening is the state court on a request to stay the foreclosure pending the appeal. The state court denied that request. And on the eve of the foreclosure, just hours after the state court denied the request, is when the Chapter 13 bankruptcy petition, the skeletal Chapter 13 bankruptcy petition was filed. The bankruptcy court made numerous findings specific to why the petition itself was incorrect and contained misrepresentations and inaccuracies. And as the appellant admits, the court appropriately dismissed the action. This was not a Chapter 13 that could be confirmed based on the amount of arrearages owed on the mortgage loan. So if that's the only bankruptcy purpose, I mean, sometimes you do have very large out of whack deficiency, but there's something else. But it appears from the statements at the 341A meeting that that was the record reflects that the sole goal here was to keep the property. That is correct. There was no other goal that could be ascertained from the record or at the 341 meeting other than to stop the foreclosure sale. And that is not an appropriate use of the bankruptcy court. The other issues are still being litigated in the state court, but it's not appropriate use of the bankruptcy to use the bankruptcy court to stall foreclosure when the state court has already made its decision on the request for a stay. And so for those reasons, unless the court has any other questions, I have nothing further. Nothing for me. Judge Gamm? No, thank you. Thank you very much. Thank you. All right. Mr. Baham, you have just under just over three minutes. Yes, Your Honor. Thank you. A couple of things. Just to go back to the mediation that you were talking about specifically, the first three mediations, I won those mediations in district court based on the fact that I had three different services attempted to do different foreclosures at three times. They've never provided the correct paperwork. They never provided a proper note for additional foreclosures. So those mediations, I won three mediations, Your Honor. I won those mediations. The last mediation, the court decided to give them a certificate, but like I say, that's under appeal. Well, you don't really win a mediation. The court just determined that you had the right to continue to mediate. Well, the actual mediation, the judge stated that no foreclosure certificate could be issued based on the documentation that they submitted. Okay? Okay. Understood. I disagreed with counsel. She said they were personally collecting a debt against me, although it was discharged because they claimed I missed X number of payments It started off by phone calls, numerous phone calls. And then, you know, those phone calls eventually stopped once I, you know, had got an attorney. She talked about the 2011 modification. If you look at the record, Bank of New York Mellon did modify the loan. The actual lender on this modification is BAC Home Loan Servicing. That's a whole nother different issue. If the judge would have looked at the whole thing, he would have seen that, that the actual lender who allegedly did a modification with is totally different from Bank of New York Mellon that alleged. Mr. Mayhem, one thing that you know, is somewhat unusual. You have all these issues, but your counsel filed your bankruptcy. And this was, this debt wasn't disputed. I know your honor. And I'm, I'm just heartbroken because we talked about doing the adversary proceeding, which we're supposed to do, which would have rebuttal all this stuff. And so, I mean, all I can say, your honor is, you know, I mean, I got so many facts here to provide the evidence is definitely on my side, you know, for my attorney, not to rebuttal. And it is, I don't know what to say at this point, but the balance that was the 20 to 20,000 that attorney fees, you know, it is excessively high. You know, in my opinion, no, no fee should have been assessed. You know, the case was just merits. Let's move forward. Let's go ahead and handle it in a district court at that point. Another point is counsel would never provide a letter agency stating that they represent a bank in New York melon. That's been another issue that should have been brought up in adversary hearing. There's no letter of agency on record stating that they represented bank in New York. But you have to recognize the limitations we have. I understand. You know, that's, that's the problem you have on this appeal is we don't have a great range of motion. It's a small window. I understand. And, you know, I would ask the panel just to take in consideration that the length of time that this has been going on and the amount of, this has been through like four or five services. And at this point now, maybe 12 years later, you know, you're looking at statute of limitations issues, but the taking consideration that I've been arguing this for the longest and the original lender countrywide stated that they didn't have standing to foreclose. And 12 years later, you have a service or a debt collector, you know, file some documentations, which should have been addressed in adversary hearing, which it wasn't, you know, and I understand where the court's coming from in that, but at least taking consideration that I've been trying to litigate this case half on my own, mostly with attorneys and that I'm just wanting to do the right thing. You know, the fair thing, you know, does bank in New York have a right, you know, to the property there's a judge have the right to issue $20,000 fees when there was no opposition against counsel's argument. So anybody could understood. And you're arguing when there's opposition. We've got your point. And I think we've made, you know, we will take this into careful consideration, but what you have to appreciate is the dispute may not be with them at this point in time. I understand. I appreciate your time. And thank you. Thank you guys. Well, thank you for your good argument. You did a good job for yourself. And thank you. Thank you. All right. And we will ask the courtroom deputy to call the last minute.
judges: Taylor, Brand, Gan